UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MARSHALL DICKER, on behalf of himself and all others similarly situated, | CASE NO. |
| Plaintiff | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| vs | |
| MEDIA RESEARCH CENTER | |
| Defendant | |

Plaintiff Marshall Dicker, by and through his attorneys, for his Complaint against Defendant Media Research Center, alleges and states as follows:

## INTRODUCTION

1. Plaintiff, on behalf of himself and all others similarly situated, brings this class action in relation to Defendant disclosing Plaintiff's personally identifiable information ("**PII**") without Plaintiff's consent.

2. Plaintiff is a subscriber of Defendant's website, cnsnews.com, which offers, *inter alia*, a wide array of prerecorded video content.

3. When Plaintiff watched videos on cnsnews.com, Plaintiff's PII was shared with Facebook without first notifying Plaintiff and without his consent.

4. Defendant developed, owns, and/or operates a platform of websites, including cnsnews.com, mrctv.org and newbusters.org (collectively, the "**Websites**"), that analogously disclose subscribers' PII to Facebook without notifying subscribers and without their consent.

5. Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "**VPPA**") each time it knowingly disclosed PII to Facebook without consent.

6. Defendant is liable to Plaintiff and the putative class for statutory damages in an amount not less than $2,500 for each disclosure of PII, punitive damages, attorneys' fees and costs.

**PARTIES**

7. Plaintiff Marshall Dicker is an individual that is over 18 years old and resides in West Orange, New Jersey. Mr. Dicker is a subscriber of cnsnews.com and watched videos on that website.

8. Defendant Media Research Center is a Virginia corporation with its principal place of business at 1900 Campus Commons Drive, Suite 600, Reston, Virginia 20191. Defendant developed, owns, and/or operates the Websites.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). CAFA jurisdiction is appropriate because there is diversity in citizenship between the parties, there are 100 or more Class Members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

10. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the action arises under a law of the United States, namely the VPPA.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant is a resident of Virginia, its principal place of business is Virginia, and much of the violative conduct complained of herein originated or occurred in this District.

12. Further, Defendant's Terms of Use include a choice of law and forum clause that specifies jurisdiction and venue as the courts of the Commonwealth of Virginia.[1]

---

[1] https://www.newsbusters.org/terms-use-agreement (accessed January 27, 2023).

## GENERAL ALLEGATIONS

### Defendant's Websites and Facebook Pixel

13. Defendant is a media publisher that developed, owns, and/or operates the Websites, which receive millions of visits per year.

14. In addition to written articles, the Websites provide a wide array of prerecorded video content.

15. Defendant has thousands of subscribers who, *inter alia*, watch prerecorded videos on the Websites.

16. To become a subscriber, individuals sign up using their email address.



17. Many subscribers, including Plaintiff, have a Facebook account.

18. Facebook "require[s] people to connect on Facebook using the name that they go by in everyday life,"[2] such that a person can be personally identified by their Facebook account.

19. When someone creates a Facebook account, a corresponding Facebook ID ("**FID**") is also created.

20. FIDs are uniquely associated with particular Facebook accounts, such that an FID can be used to identify and view the associated Facebook profile.

21. When someone becomes a subscriber to Defendant's Websites, they receive recurring emails from Defendant with links to articles and videos published to the Websites.

22. Defendant monetizes its Websites by knowingly collecting and disclosing its subscribers' PII to Facebook, namely data that personally identifies subscribers and the videos they view.

23. Defendant's Websites use a code analytics tool called "Facebook Pixel," which was implemented at the discretion of Defendant.

24. Facebook Pixel tracks the actions of Website visitors (subscribers), such as the pages a visitor accesses and the content they view.

25. When someone watches a video on Defendant's Websites, the video name and the viewer's FID are simultaneously sent to Facebook via Facebook Pixel.

26. The video name/description and FID are sent to Facebook together and at the same time as a single piece of data.

---

[2] https://transparency.fb.com/en-gb/policies/community-standards/account-integrity-and-authentic-identity/ (accessed January 27, 2023).

27. For example, this occurs when accessing the article, "Blinken Pleads for Diplomacy: 'If Russia Doesn't Invade…We Will Be Relieved,'" which includes a prerecorded video matching the article's headline and page title:



28. When this video is accessed, the video name and viewer's FID, which is represented by the "c_user" cookie, are sent to Facebook:

[Screenshot of a GET request showing URL to facebook.com/tr/ with Facebook Pixel tracking data for mrctv.org/videos/blinken-pleads-diplomacy-if-russia-doesnt-invade-we-will-be-relieved, along with HTTP headers including a cookie containing c_user=1000[redacted].]

29. Defendant, via Facebook Pixel, discloses to Facebook the URL that the viewer has accessed (e.g. "mrctv.org[]blinken-pleads-diplomacy-if-russia-doesnt-invatewe-will-be-relieved").

30. The "c_user" cookie that is transmitted contains the viewer's unencrypted FID.

31. A Facebook profile can be identified and viewed by appending an FID to the end of "Facebook.com," such that a person is identifiable by their FID.

32. When a URL containing a video name/description and an FID are simultaneously disclosed, that information indicates the video material accessed by a specific individual, thus constitutes PII.

33. Defendant knew that URLs containing video names/descriptions and FIDs are simultaneously disclosed by Facebook Pixel.

34. Defendant also knew that such combined data identifies Website users and the videos they watched.

35. Defendant did not obtain the consent of Website users to disclose this information, *i.e.*, their PII.

36. Website users are not given an opportunity to withdraw from or prohibit the disclosure of their PII or the video content they view.

37. The disclosure of Website users' PII and/or the video content they view is not incident to the ordinary course of business of Defendant (i.e. it is not for debt collection, order fulfillment, request processing, or the transfer of ownership).

38. The surreptitious disclosure of PII (i.e. an individual's FID paired with the name/description of video content they view) is an outrageous invasion of privacy and would be offensive to a reasonable person.

**The Video Privacy Protection Act**

39. In recognition of this, Congress passed the VPPA so that individuals can "maintain control over personal information divulged and generated in exchange for receiving services from video tape service providers." S. Rep. No. 100-599, pg. 8.

40. The VPPA provides that a "video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d)." 18 U.S.C. § 2710(b)(1).

41. Under the VPPA, "the term 'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials…" 18 U.S.C. § 2710(a)(4).

7

42. An entity that provides videos via streaming is a video tape service provider under the VPPA.

43. Under the VPPA, "the term 'consumer' means any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

44. Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

45. Where a video tape service provider knowingly discloses the PII of a consumer without consent, the aggrieved person may bring a civil action for, *inter alia*, statutory damages in an amount not less than $2,500, punitive damages, attorneys' fees and costs. 18 U.S.C. § 2710(c)(2)(A)-(D).

## **PLAINTIFF/PROPOSED CLASS REPRESENTATIVE**

46. Plaintiff has been a subscriber of Defendant's website, cnsnews.com, since September 2020.

47. Plaintiff has had a Facebook account at all times since subscribing to cnsnews.com, which he is perpetually logged into.

48. Plaintiff's Facebook profile contains his name, whereby Plaintiff is personally identified by that information.

49. Since becoming a subscriber, Plaintiff has regularly watched prerecorded videos on cnsnews.com using the same device and/or browser in which he is logged into his Facebook account.

50. Each time Plaintiff watched a video on cnsnews.com, Defendant simultaneously disclosed Plaintiff's FID and the name/description of content he viewed to Facebook via Facebook Pixel. This information was sent together and at the same time.

51. This paired information personally identifies Plaintiff and the video material that he requested, obtained, accessed, and/or watched on cnsnews.com.

52. Plaintiff did not consent to the disclosure of his PII, in writing or otherwise, and Defendant did not attempt to obtain Plaintiff's consent in a form separate and distinct from other legal obligations.

53. Defendant did not provide Plaintiff with an opportunity to withdraw from the disclosure of his PII.

54. Defendant's disclosure of Plaintiff's PII was not related to an ordinary course of business (e.g. debt collection, order fulfillment, request processing, or any transfer of ownership).

## CLASS ALLEGATIONS

### A. Definition of the Class

55. Plaintiff brings this action individually and on behalf of all persons that the Court may determine appropriate for class certification, pursuant to Fed. R. Civ. P. 23 (the "**Class**" or "**Class Members**"). Plaintiff seeks to represent a Class of persons preliminarily defined as:

> **All persons in the United States who have a Facebook account, subscribed to Defendant's Website(s), and watched one or more prerecorded videos on the Website(s).**

This definition is subject to modification as discovery discloses further information. Plaintiff reserves the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

56. This case is properly maintainable as a class action pursuant to and in accordance with Fed. R. Civ. P. 23 in that:

   a) The Class, which includes thousands of members, is so numerous that joinder of all Class Members is impracticable;

   b) There are substantial questions of law and fact common to the Class, including those set forth in greater particularity herein;

c) Questions of law and fact, such as those enumerated below, which are common to the Class, predominate over any questions of law or fact affecting only individual members of the Class;

d) The claims of the representative parties are typical of the claims of the Class;

e) A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

f) The relief sought in this class action will effectively and efficiently provide relief to all members of the Class;

g) There are no unusual difficulties foreseen in the management of this class action; and

h) Plaintiff, whose claims are typical of those of the Class, through his experienced counsel, will zealously and adequately represent the Class.

**B. Numerosity**

57. There are thousands of individuals who are subscribers of Defendant and have watched videos on Defendant's Websites. Accordingly, the Class Members are so numerous that joinder of all parties is clearly impracticable.

58. The prosecution of separate lawsuits by Class Members would risk inconsistent or varying adjudications. Class-wide adjudication of these claims is, therefore, appropriate.

**C. Commonality**

59. Numerous common questions of law and fact predominate over any questions affecting individual Class Members including, but not limited to, the following:

a) Whether Defendant collected PII of Class Members who visited its Websites;

b) Whether Defendant disclosed PII of Class Members who watched videos on its Websites;

c) Whether disclosure of PII via Facebook Pixel constitutes "knowing disclosure";

d) The nature and extent of PII disclosed;

e) How PII was disclosed and to whom;

f) Whether Defendant's Websites obtain informed written consent before disclosing PII of subscribers;

g) Whether Defendant's Websites provide a clear and conspicuous opportunity for subscribers to withdraw from disclosures on a case-by-case basis; and

h) Whether the disclosures of Class Members PII warrants punitive damages.

### D. Typicality

60. Plaintiff has the same interests in this matter as all other members of the Class and his claims are typical of the claims of all members of the Class. If brought and prosecuted individually, the claims of each Class Member would require proof of substantially the same material and substantive facts, utilize the same complex evidence (e.g. expert testimony), rely upon the same legal theories, and seek the same type of relief.

61. The claims of the Plaintiff and other Class Members have a common cause and their damages are of the same type. The claims originate from the synonymous disclosure of PII by Defendant without consent.

62. All Class Members have been aggrieved by Defendant's disclosure of their PII without consent and are entitled to, *inter alia*, statutory damages.

### E. Adequacy of Representation

63. Plaintiff's claims are sufficiently aligned with the interests of the absent Class Members to ensure that the Class' claims will be prosecuted with diligence and care by Plaintiff as representative of the Class. Plaintiff will fairly and adequately represent the interests of the Class and he does not have interests adverse to the Class.

64. Plaintiff has retained the services of counsel who are experienced in complex class action litigation. Plaintiff's counsel will vigorously prosecute this action and will otherwise protect and fairly and adequately represent the Plaintiff and all absent Class Members.

**F. Class Treatment is the Superior Method of Adjudication**

65. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a) Individual claims by the Class Members would be impracticable as the costs of pursuit would far exceed what any one Class Member has at stake;

   b) Individual claims by Class Members would create a risk of inconsistent or varying adjudications, which would present the Defendant with incompatible standards of conduct;

   c) Individual claims by individual Class Members would create a risk of adjudications which would, as a practical matter, be dispositive of the interests of other individuals who are not parties to the adjudications, or substantially impair or impede their ability to protect and pursue their interests;

   d) Little or no individual litigation has been commenced over the controversies alleged in this Complaint and individual Class Members are unlikely to have an interest in separately prosecuting and controlling individual actions;

   e) In view of the complexity of the issues and the expenses of litigation, the separate claims of individual Class Members are likely insufficient in amount to support the costs of filing and litigating separate actions;

   f) Plaintiff seeks relief relating to the Defendant's common actions and the equitable relief sought would commonly benefit the Class as a whole;

   g) The concentration of litigation of these claims in one action will achieve efficiency and promote judicial economy; and

   h) The proposed class action is manageable.

## CAUSE OF ACTION I

### VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT, 18 U.S.C. § 2710

66. Plaintiff restates all allegations of this Complaint as if fully restated herein.

67. Defendant, through its Websites, is engaged in the business of delivering audio visual materials (e.g. videos) to the Plaintiff and Class in multiple states and across state borders, thus Defendant is a "video tape service provider" under the VPPA.

68. The Plaintiff and Class are consumers under the VPPA because they are subscribers of Defendant, a video tape service provider, and have watched prerecorded videos on Defendant's Websites.

69. When the Plaintiff and Class Members watched videos on Defendant's Websites, Defendant knowingly disclosed their FIDs and the name of the video/content that they viewed to Facebook via Facebook Pixel.

70. The disclosed information is PII because it personally identifies the Plaintiff and Class Members, as well as the video content that each of those respective individuals viewed.

71. The Plaintiff and Class did not consent to Defendant disclosing their PII.

72. Defendant did not provide an opportunity for the Plaintiff and Class to withdraw from the disclosure of their PII.

73. Defendant's disclosure of the Plaintiff's and Class' PII was not in the ordinary course of business.

74. Defendant is liable to the Plaintiff and Class for statutory damages of not less than $2,500 for each disclosure of their PII, punitive damages, attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows:

A. Certification of the proposed Class by order pursuant to Fed. R. Civ. P. 23;

B. Designation of the Plaintiff as representative of the proposed Class and designation of his counsel as Class counsel;

C. Judgment in favor of the Plaintiff and Class Members as against the Defendant;

D. An award to each Plaintiff and Class Member for statutory damages not less than $2,500 and punitive damages, including pre- and post-judgment interest;

E. An award of injunctive relief prohibiting Defendant from disclosing the PII of its subscribers without consent and in accordance with the VPPA;

F. An award of attorneys' fees and costs, including pre- and post-judgement interest;

G. An Order holding that Defendant's disclosure of the Plaintiff's and Class' PII without consent was in violation of the VPPA;

H. Such further relief that this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Date: April 6, 2023

Respectfully submitted,

s/
Joshua Erlich, VA Bar No. 81298
The Erlich Law Office, PLLC
2111 Wilson Blvd.
Suite 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 351-9292
Email: jerlich@erlichlawoffice.com

Nicholas A. Coulson*
Lance Spitzig*
*Pro hac vice applications to be submitted
**LIDDLE SHEETS COULSON P.C.**
975 East Jefferson Avenue
Detroit, MI 48207-3101
T: (313) 392-0015
F: (313) 392-0025
E: ncoulson@lsccounsel.com
E: lspitzig@lsccounsel.com

*Attorneys for Plaintiff and the Putative Class*