# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| MARSHALL DICKER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  1:23-cv-453 (TSE/IDD) |
| v. | ) | |
| | ) | |
| MEDIA RESEARCH CENTER | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

**TABLE OF CONTENTS**

**INTRODUCTION** ..................................................................................................................1

**BACKGROUND** ....................................................................................................................3

**LEGAL STANDARD** ...........................................................................................................5

**ARGUMENT** .........................................................................................................................6

    A.  Defendant's Disclosures Violate the VPPA Because They Reveal That Plaintiff "Requested or Obtained" Specific Video Materials or Services ...................................6

    B.  As a Subscriber to Defendant's Website, Plaintiff is a Consumer under the VPPA .....9

    C.  Defendant's Actions Were and Could Only Have Been Taken Knowingly ...............13

    D.  The VPPA Plainly Applies to Defendant's Pre-Recorded Video Content .................15

**CONCLUSION** .....................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**

*Ambrose v. Boston Globe Media Partners LLC*,
    2022 U.S. Dist. LEXIS 168403 (D. Mass. Sept. 19, 2022)....................................................6

*Austin-Spearman v. AMC Network Entertainment LLC*,
    98 F. Supp. 3d 662 (S.D.N.Y. 2015)...................................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 555 (2007).....................................................................................................5

*Belozerov v. Gannett Co.*,
    Civil Action No. 22-10838-NMG, 2022 U.S. Dist. LEXIS 229436  (D. Mass. Dec. 20,
    2022)........................................................................................................................10, 13

*Columbia v. Haley*,
    738 F.3d 107 (4th Cir. 2013)................................................................................................5

*Czarnioka v. Epoch Times Ass'n*,
    2022 U.S. Dist. LEXIS 209067  (S.D.N.Y. Nov. 17, 2022) ......................................9, 13, 14

*E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*,
    213 F.3d 175 (4th Cir. 2000)................................................................................................5

*Edwards v. Murphy-Brown, L.L.C.*,
    760 F. Supp. 2d 607 (E.D. Va. 2011)...................................................................................5

*Ellis v. Cartoon Network, Inc.*,
    803 F.3d 1251 (11th Cir. 2015).....................................................................................10, 11

*Feldman v. Star Tribune Media Co. LLC*, No. 22-cv-1731 (ECT/TNL)
    2023 U.S. Dist. LEXIS 37416, at *5 (D. Minn. Mar. 7, 2023) ......................................14, 15

*Goldstein v. Fandango Media, LLC*,
    2023 U.S. Dist. LEXIS 71415, No. 22-80569-CIV-MARRA (S.D. Fla.) ..........................12

*Harris v. Pub. Broad Serv.*,
    2023 U.S. Dist. LEXIS 45888, No. 1:22-cv-2456-MLB (N.D. GA) ..................................10

*Harris v. Pub. Broad. Serv.*,
    2023 U.S. Dist. LEXIS 45888 (N.D. GA. Mar. 20, 2023)....................................8, 10, 11, 12

*In re Hulu Priv. Litig.*,
    2014 U.S. Dist. LEXIS 59479 (N.D. Cal. Apr. 28, 2014).....................................................8

*In re Hulu Priv. Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ...............................................................................14

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012)....................................15

*In re Hulu Privacy Litig.*,
    2012 U.S. Dist. LEXIS 112916.................................................................................16

*In re Nickelodeon Consumer Priv. Litig*.,
    2014 U.S. Dist. LEXIS 91286 (D.N.J. July 2, 2014) ............................................6

*Jackson v. Fandom, Inc.*,
    2023 U.S. Dist. LEXIS 125531 (N.D. Cal. Jul. 20, 2023) ....................................8

*Lebakken v. WEBMD, LLC,*
    2022 U.S. Dist. LEXIS 201010 (N.D. Ga. Nov. 4, 2022)....................................11

*M.K. v. Google LLC*,
    No. 21-cv-08465-VKD, 2023 U.S. Dist. LEXIS 133602 (N.D. Cal. Aug. 1, 2023)............12

*Martin v. Meredith Corp.*,
    2023 U.S. Dist. LEXIS 27539 (S.D.N.Y. Feb. 17, 2023) .............................................*passim*

*Philips v. Pitt Cnty. Mem. Hosp.*,
    572 F.3d 176 (4th Cir. 2009)....................................................................................5

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) ................................................................9, 12

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015)....................................................................................6

*Sellers v. Bleacher Report, Inc.*,
    2023 U.S. Dist. LEXIS 131579 (C.D. Cal. Jul. 28, 2023) ....................................7

*Stark v. Patreon, Inc.*,
    2022 U.S. Dist. LEXIS 187602 (N.D. Cal. Oct. 13, 2022) ....................................6

*Walker v. Meta Platforms, Inc.*,
    No. 22-cv-02442-JST, 2023 U.S. Dist. LEXIS 93111 (N.D. Cal. Mar. 3, 2023) .................15

*Yershov v. Gannett Satellite Info. Network, Inc.*,
    820 F.3d 482 (1st Cir. 2016) ........................................................................6, 10, 13

**Statutes**

18 U.S.C. at *16-17 ...................................................................................................11

18 U.S.C. § 2710(a)(1) ...............................................................................................11

18 U.S.C. § 2710(a)(3) .................................................................................................6

**Rules**

Fed R. Civ P. 12(b)(6) .................................................................................................5

Fed R. Civ. P. 12(c) .....................................................................................................5

## <u>INTRODUCTION</u>

By openly asking this Court to depart from the weight of settled authority in similar cases[1]—for reasons that favor policy argument to the near exclusion of credible statutory interpretation—Defendant gives away the game. Less than six weeks after filing an Answer (Doc. 14), Defendant filed its Motion for Judgment on the Pleadings based on little more than jurisprudential outliers and *ad hominem* attacks against plaintiffs' lawyers. Each of Defendant's arguments falls into one of two categories. Either they rely on outlying minority-view authority, or they lack any support in the caselaw and merely repeat previously rejected arguments with minor cosmetic revisions.

First, Defendant asks the Court to hold that when a website sends Facebook/Meta a URL that both by name and function identifies a specific video, there is no VPPA violation. It does so in reliance on an opinion (*Martin v. Meredith Corp.*, 2023 U.S. Dist. LEXIS 27539 (S.D.N.Y. Feb. 17, 2023)) that is both inapposite to the instant action and an outlier as compared with numerous other decisions. The overwhelming weight of authority has reached a different result, as should this Court.

Defendant next implores the Court to side with a recent minority-view strain of authority (comprised of three cases) which ostensibly would require direct monetary payment to create a "subscriber" relationship for purposes of the VPPA. Defendant acknowledges, though, that most courts have rejected such a requirement. The more widespread and better-reasoned approach takes a holistic view of a user's relationship with websites that publish video, and under that approach

---

[1] "Doubtless, Dicker will cite other decisions that… denied motions to dismiss complaints brought under the VPPA. … As this is the first VPPA case in this Circuit, this Court writes on a clean slate; this Court is not bound by those decisions, but only by the language that Congress actually chose to effect its intent. The allegations and arguments here present issues of first impression in this Circuit, and they should lead this Court to dismiss the Complaint." ([Doc. 25] at 9).

Plaintiff is plainly a subscriber to Defendant's website. This is the only sensible approach here, particularly in light of the fact that Defendant's website is festooned with opportunities for users to "Subscribe" to it. The header of Defendant's website contains not one but two links to "Subscribe":[2]                                                                                                                    :



A "Subscribe" link similarly appears in Defendant's site-wide footer, belying in plain terms Defendant's argument that a person "cannot subscribe" to the site: [3]

---

[2] http://www.cnsnews.com (last visited August 14, 2023).
[3] *Id.*



Both the weight of authority and common sense dictate that users can and do subscribe to Defendant's website.

Defendant's other arguments are superficially revised versions of failed arguments that fare no better when viewed through the lens of the rapidly expanding body of authority in similar cases. Apart from their novelty, they offer nothing that materially sets them apart from their failed predecessors. In factually indistinguishable case after case, courts have rejected these arguments at the pleading stage as flawed, premature, or both. This Court should do the same.

## BACKGROUND

Plaintiff filed his Complaint on April 6, 2023. ([Doc. 1]). Relevant to the instant motion, he alleges that Defendant is a media publisher that developed, owns, and/or operates Websites which receive millions of visits per year. *Id.* ¶13. The Websites provide a "wide array of prerecorded video content." *Id.* ¶14. Plaintiff alleges that Defendant "monetizes its Websites by knowingly collecting and disclosing its subscribers' [personally identifiable information] to

Facebook, namely data that personally identifies subscribers and the videos they view." *Id.* ¶ 22. This is done using a code analytics tool called "Facebook Pixel," which was implemented at the discretion of Defendant. ¶ 23. Importantly for the purposes of Defendant's motion, Plaintiff alleges that:

    a.  Facebook Pixel tracks the actions of Website visitors (subscribers), such as the pages a visitor accesses and the content they view (¶24);

    b.  When someone watches a video on Defendant's Websites, the video name and the viewer's FID are simultaneously sent to Facebook via Facebook Pixel (¶25); and

    c.  The video name/description and FID are sent to Facebook together and at the same time as a single piece of data. (¶26).

Just as importantly, Plaintiff does not merely allege (as have plaintiffs in certain other cases, such as *Martin*) that the title of a webpage that happens to contain a video is sent to Facebook/Meta. He alleges that the content users view and the "video name" and "description" are sent to Facebook/Meta.

    As shown above (from the Defendant's website, which is both incorporated into the Complaint and a proper subject of judicial notice), Defendant's website is littered with links to "Subscribe." Plaintiff subscribed to Defendant's website by providing his e-mail address in September, 2020. *Id*. ¶¶ 16, 46. "Since becoming a subscriber, Plaintiff has regularly watched prerecorded videos on cnsnews.com using the same device and/or browser in which he is logged into his Facebook account." *Id*. ¶49. "Each time Plaintiff watched a video on cnsnews.com, Defendant simultaneously disclosed Plaintiff's FID and the name/description of content he viewed to Facebook via Facebook Pixel. This information was sent together and at the same time." *Id*. ¶50. "This paired information personally identifies Plaintiff and the video material that he requested, obtained, accessed, and/or watched on cnsnews.com." *Id.* ¶51.

    Defendant filed its answer on June 22, 2023 ([Doc. 14]), and amended the answer (adding a counterclaim which Plaintiff will move to dismiss) on July 28, 2023. ([Doc. 22]).  On August 1,

2023, it filed the instant motion, in which it argues that Plaintiff has failed to state a claim for one or more violations of the VPPA. The four bases for these arguments are Defendant's contentions that (1) Plaintiff does not allege the disclosure of personally identifiable information; (2) Plaintiff is not a "subscriber" and therefore not a "consumer" under the VPPA; (3) Plaintiff does not allege that Defendant's disclosure was made knowingly; and (4) the video content Defendant provides is not covered by the VPPA.

## **LEGAL STANDARD**

"A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). "To survive such a motion, the complaint must contain facts sufficient 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[A] court should 'assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Edwards v. Murphy-Brown, L.L.C.*, 760 F. Supp. 2d 607, 615 (E.D. Va. 2011) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court may consider the complaint, answer, and any materials attached to those pleadings or motions for judgment on the pleadings "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The motion "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Instead, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable and that a recovery is very remote and unlikely.'" *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 441 (4th Cir. 2015)(citations omitted).

## ARGUMENT

**A. Defendant's Disclosures Violate the VPPA Because They Reveal That Plaintiff "Requested or Obtained" Specific Video Materials or Services.**

Defendant's first argument is that Plaintiff's VPPA claim fails because the Complaint fails to allege that Defendant disclosed "'personally identifiable information' which Congress defined as information that identifies a person as having *requested or obtained* specific video materials or services." (Doc. 25) at 17 (quoting 18 U.S.C. § 2710(a)(3)) (emphasis Defendant's). Under the VPPA, "the term 'personally identifiable information' includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Importantly, PII is "information reasonably and foreseeably likely to reveal which… videos [a plaintiff] has obtained." *Yershov v. Gannett Satellite Info. Network, Inc*., 820 F.3d 482, 486 (1st Cir. 2016). A person's FID paired with the title/description of a video present on a URL is PII under the VPPA. *See, e.g., Stark v. Patreon, Inc*., 2022 U.S. Dist. LEXIS 187602, *4, 23-25 (N.D. Cal. Oct. 13, 2022); *Ambrose v. Boston Globe Media Partners LLC*, 2022 U.S. Dist. LEXIS 168403 (D. Mass. Sept. 19, 2022*); In re Nickelodeon Consumer Priv. Litig*., 2014 U.S. Dist. LEXIS 91286, at 43 (D.N.J. July 2, 2014).

To support its argument on this point, Defendant cites only a single case, *Martin.* As an initial matter, *Martin* is inapposite because there (unlike here), the plaintiff alleged that "the version of the Facebook Pixel used on People.com sends only the Facebook ID and the name of the webpage that a user accessed" as opposed to the name of a specific video. *Martin*, 2023 U.S. Dist. LEXIS 27539, *7. Further, because (also unlike here) the website's video content did not match the titles of the pages on which they were located, "disclosing to a third party the title of the webpage does not reveal the title of a video on the page." *Id.* at *9.

6

Perhaps more importantly, numerous courts have considered and rejected similar arguments, both in the general sense (that video URLs are not personally identifiable information, see above) and in the precise context at issue here (that visiting a page's URL does not constitute requesting or obtaining specific video materials, see below). This Court should follow the strong weight of authority.

In *Sellers v. Bleacher Report, Inc.*, 2023 U.S. Dist. LEXIS 131579 (C.D. Cal. Jul. 28, 2023), the court expressly rejected a nearly identical application of *Martin*'s reasoning as Defendant now advocates. It noted that

> The plaintiff in [*Martin*] alleged that the website People.com employed a Facebook pixel to send 'the Facebook ID and the name of the webpage that a user accessed.' The court dismissed the claim because the alleged disclosure was limited to the name of a webpage that may contain a video, not the name of the video itself. Here, however, plaintiff alleges that Bleacher Report uses the Facebook pixel to disclose 'the content name of the video the digital subscriber watched, the URL, and the digital subscribers' FID.' This is sufficient at the pleadings stage.
> …
> Bleacher Report **also contends that plaintiff must have 'actively elected to view videos' in order to have 'requested or obtained' them.** It contends that plaintiff must distinguish between videos he clicked on and videos that auto-played when he clicked on an article.  This argument ignores the plain language of the statute. To 'request' something is to actively seek it out, but **to 'obtain' something is to gain it, not necessarily by choice.** Bleacher Report itself cites Merriam Webster's definition of 'obtain' as 'to gain or attain *usually* by planned action or effort.' (citation). 'Usually' means not always, so by this definition, **a thing can be 'obtained' without planned action or effort. Further, if the Court were to read 'obtained' to require 'requested,' then 'obtained' in the statute would be surplusage because every video obtained would first have been requested.** Because plaintiff has sufficiently alleged that he requested or obtained the videos in question, defendant's argument fails.

*Id*. at  *10-11 (citations omitted) (emphasis added).

Similarly, in *Jackson v. Fandom, Inc.*, 2023 U.S. Dist. LEXIS 125531 (N.D. Cal. Jul. 20, 2023), the court rejected the defendant's argument that "its disclosure of which webpages Jackson

visited does not constitute disclosure of her video viewing history." *Id.* at *12. It noted that (as here):

> [i]n the first amended complaint, [the plaintiff] allege[d] that the Pixel 'logs which pages are visited, buttons are clicked, and, in this case, which videos a user requested and viewed on Fandom,'and that Fandom 'discloses to Meta the full name of each video a user watched, together with the user's Facebook Profile ID.

*Id*. The court therefore found that "taking the facts alleged in the complaint as true and construing all inferences in Jackson's favor, Jackson plausibly alleges that Fandom disclosed her video viewing history to Meta, which included her having 'obtained specific video materials or services.'" *Id*.

In *Harris v. Pub. Broad. Serv.*, 2023 U.S. Dist. LEXIS 45888 (N.D. GA. Mar. 20, 2023), the court denied a similar challenge as premature at the pleadings stage.

> It is not clear whether Defendant is arguing Plaintiff must have *actually watched* the video or whether she must have *visited* the *URL for its video content.* Either way (and as the above discussion indicates), Defendant is making a fact-based argument against application of the VPPA… For now, the Court accepts Plaintiff's allegation that Defendant 'sends the content name of the video the digital subscriber watched, the URL, and the digital subscriber's FID to Facebook.' This plainly alleges the information Defendant transmits to Facebook identifies a video 'requested or obtained' by Plaintiff.

*Id.* at *16-18 (emphasis in original).

The foregoing authorities are merely the most recent and/or specific cases rejecting Defendant's argument, but there are numerous others. *See, e.g.*, *In re Hulu Priv. Litig.*, 2014 U.S. Dist. LEXIS 59479, *45 (N.D. Cal. Apr. 28, 2014) (transmission of "the watch page with the video name" along with Facebook ID constitutes "an electronic transmission of the Hulu user's actual identity on Facebook and the video that the Facebook user was watching" in violation of the VPPA).

Beyond the compelling competing authority, there are multiple standalone reasons that the Court should reach a different result than that in *Martin*. First, here there is no suggestion in the Complaint that (1) the titles of the videos on Defendant's website do not match perfectly to the titles of the pages contained in the URL; or (2) that actual video titles are not transmitted to Facebook/Meta. That is a threshold difference itself, such that dismissal would be at best premature as it requires probing well beyond the pleadings. But perhaps more importantly, the *Martin* Court omitted an important consideration. Courts have repeatedly found that the Facebook ID identifies a particular person because the person can be revealed by visiting a URL, a very simple step. *See, e.g., Robinson*, 152 F. Supp. 3d at 184; *Czarnionka*, 2022 U.S. Dist. LEXIS 209067 at *7. The same simple step of actually *visiting* the transmitted URL would tell the recipient precisely what if any video was on the page. And whether the person *actually watched* the video cannot possibly be a threshold consideration. Countless people once rented physical videos and returned them without having the opportunity to watch them. One would be hard pressed to argue that this exempted those video materials from the VPPA. The only coherent construction of the act is that a person requests and/or obtains video material when they browse to a page that contains it. Here, Plaintiff has alleged even more than is necessary to satisfy that requirement.

**B. As a Subscriber to Defendant's Website, Plaintiff is a Consumer under the VPPA.**

Defendant argues that Plaintiff is not a "consumer" under the VPPA, because in order to be a "subscriber" he would need to both (1) "subscribe" to something that gave him special privileges beyond those associated with a newsletter; and (2) pay money. ([Doc. 25], 14-21). Here again, the weight of authority counsels otherwise.

At the appellate level, the Eleventh Circuit has expressly stated that for VPPA purposes, "payment is not a necessary element of subscription." *Ellis v. Cartoon Network, Inc.*, 803 F.3d

1251, 1256 (11th Cir. 2015). Instead, it endorsed the notion that "subscriptions involve either payment, registration, commitment, delivery, [] or access to restricted content[.]" *Id.* Relevant considerations include whether the relationship between the plaintiff and the video tape service provider involves payment, registration, establishment of an account, provision of personal information, receipt or delivery of goods or services, expressed association, and/or access to restricted content. *See id.* Similarly, the First Circuit rejected any payment requirement, noting that "if the term 'subscriber' required some sort of monetary payment, it would be rendered superfluous by the two terms preceding it." *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487 (1st Cir. 2016). The court thereby endorsed a definition of "'subscribe' as '[t]o receive or be allowed to access electronic texts or services by subscription' with 'subscription' defined, in turn, to include '[a]n agreement to receive or be given access to electronic texts or services.'" *Id.* (quoting *The American Heritage Dictionary* 1726 (4th ed. 2000)). Subsequent authority from courts within the First Circuit make clear the import of this decision: "[t]he First Circuit has already struck down a nearly identical argument… declin[ing] to interpret the [VPPA] as incorporating monetary payment as a necessary element." *Belozerov v. Gannett Co.*, Civil Action No. 22-10838-NMG, 2022 U.S. Dist. LEXIS 229436, at *7 (D. Mass. Dec. 20, 2022)

In *Harris v. Pub. Broad Serv.*, 2023 U.S. Dist. LEXIS 45888, No. 1:22-cv-2456-MLB (N.D. GA) (Mar. 20, 2023), the court thoroughly analyzed the "subscriber" requirement under the Eleventh Circuit's test as set out in *Ellis*. The plaintiff in *Harris* had provided the defendant with her name, email, address, IP address and cookies. *Harris*, 2023 U.S. Dist. LEXIS 45888 at *7. Notably, the plaintiff "never paid Defendant, did not make any commitment to Defendant, and was 'free to delete [her PBS account] without consequences whenever she liked.'" *Id.* (quoting *Ellis*, 803 F.3d at 1253).  But the court observed that:

> [i]n finding that 'subscription does not require payment, the Eleventh Circuit explained 'there are numerous periodicals, newsletters, blogs, videos, and other services that a user can sign up for (i.e., subscribe to) and receive for free.' So, the Eleventh Circuit specifically contemplated free newsletter subscriptions — like the one at issue here — when making its decision in *Ellis*. The Court thus finds Plaintiff has sufficiently alleged she is a subscriber under the VPPA.

*Harris*, 2023 U.S. Dist. LEXIS 45888 at *8. Further, the court declined to endorse the argument that the newsletter to which the plaintiff subscribed was "distinct and set apart from [the defendant's] provision of videos[,]" leaving the question for another day but noting that "at first glance, the VPPA requires only a subscription to *any* goods or services, not to goods or services related to video." *Id.* at *10 (citing 18 U.S.C. § 2710(a)(1)) (emphasis in original). Rejecting another of Defendant's arguments as premature, the court also found that "[i]t is not clear whether Defendant is arguing Plaintiff must have *actually watched* the video or whether she must have *visited* the *URL for its video content*. Either way (and as the above discussion indicates), Defendant is making a fact-based argument against application of the VPPA." *Id.* at *16-17.

The same result was reached in *Lebakken v. WEBMD, LLC,* 2022 U.S. Dist. LEXIS 201010 (N.D. Ga. Nov. 4, 2022). There, the court found that where:

> WebMD essentially argue[d] that Lebakken providing her email address to WebMD to subscribe to the e-newsletter in 2017 is too attenuated from her viewing of any WebMD videos to state claim under the VPPA…[t]he question here, however, is not whether Lebakken alleges that she viewed the videos embedded within the e-newsletter but rather whether the e-newsletter constitutes a good or service to which Lebakken subscribed. Having resolved the answer to the former question in the affirmative and construing the facts as alleged in the First Amended Complaint in the light most favorable to Lebakken, the Court concludes that Lebakken states a claim as a consumer under the VPPA.

*Id.* at *9-10.

District courts in other circuits have reached similar holdings. *Goldstein v. Fandango Media, LLC*, 2023 U.S. Dist. LEXIS 71415, No. 22-80569-CIV-MARRA (S.D. Fla.) (Mar. 7, 2023), the court rejected the defendant's arguments that it was not a video tape service provider,

and that the plaintiff was not a subscriber as premature, finding that "to analyze an ongoing relationship between Plaintiffs and Defendant, the Court must have a factual record upon which to rely regarding Defendant's business." *Id.* at * 10. In *M.K. v. Google LLC*, No. 21-cv-08465-VKD, 2023 U.S. Dist. LEXIS 133602 (N.D. Cal. Aug. 1, 2023), the court declined to apply any requirement for payment or a comparable commitment from the plaintiff.

Even an opinion from the epicenter of Defendant's minority-view authority supports Plaintiff's position. In *Austin-Spearman v. AMC Network Entertainment LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015), the court found that a subscription "entails an exchange between subscriber and provider whereby the subscriber imparts *money and/or personal information* in order to receive a future and recurrent benefit, whether that benefit comprises, for instance, periodical magazines, club membership, cable services, *or email updates*." *Austin-Spearman*, 98 F. Supp. 3d at 669 (emphasis added).

Here, Plaintiff *did* impart personal information in order to receive the future and recurrent benefit of email updates in the form of electronic newsletters. That personal information includes his e-mail address, but also the personal information that is at the heart of this case. In *Harris,* the court found the plaintiff was a subscriber under the test set out in *Ellis* where she had provided the defendant with her name, email, address, IP address and cookies. *Harris*, 2023 U.S. Dist. LEXIS 45888 at *7. Here, at a minimum, Plaintiff provided his e-mail, IP address (which is transmitted in any internet interaction), Facebook ID, and cookies. Numerous courts have found that a Facebook ID, which Plaintiff provided Defendant, is at least the equivalent of a name. *See, e.g., Robinson v. Disney Online*, 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2015) ("A Facebook ID, as the *Hulu* court found, is thus equivalent to a name—it stands in for a specific person"); *Czarnionka*, 2022 U.S. Dist. LEXIS 209067 at *7 (same). Plaintiff provided Defendant with at

least four of the five types of personal information that was sufficient in *Harris* irrespective of a lack of payment.[4] The same outcome should issue.

### C.  Defendant's Actions Were and Could Only Have Been Taken Knowingly.

Defendant argues that Plaintiff fails to allege that it disclosed his PII knowingly, essentially because it indiscriminately disclosed viewing information to Facebook/Meta without regard to whether a person was a subscriber or otherwise. ([Doc. 25]27-32). This novel argument relies on attempting to extend the statute's requirement that the disclosure be made knowingly (and therefore voluntarily) to require that the defendant know the disclosure relates to a "consumer." Even if that application had legs, which is a dubious proposition, it would not change the result here. Defendant knowingly and deliberately installed a piece of code into its website which would indiscriminately disclose its users viewing information to Facebook/Meta. It therefore knowingly acted in such a way that would guarantee that its subscribers' PII was transmitted to Facebook/Meta. In every single VPPA case cited in this brief and in Defendant's, the defendant's technology was configured in an analogous way. To accept Defendant's argument would be to immunize all VPPA defendants unless they deliberately distinguished between how they treat subscribers and non-subscribers for purposes of disclosure. This absurd result defies reason, the realities of modern technology, and the settled caselaw.

---

[4] The Eleventh Circuit is not alone in ruling out payment as a prerequisite for subscribership. The First Circuit reversed a district court's holding requiring that to be a subscriber, a VPPA plaintiff must pay money or have a similar commitment to the defendant, holding that "[w]hile [the plaintiff] paid no money, access was not free of a commitment to provide consideration in the form of … information, which was of value to [the defendant]. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016); *see also Belozerov,* 2022 U.S. Dist. LEXIS 229436 at *7 (following *Yershov* in "declin[ing] to interpret the [VPPA] as incorporating monetary payment as a necessary element.").

A defendant discloses PII knowingly when it has a "consciousness of transmitting" that information. *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). The only consideration in determining whether Defendant disclosed Plaintiff's PII "knowingly" is whether it did so consciously. *See, e.g., Czarnioka v. Epoch Times Ass'n*, 2022 U.S. Dist. LEXIS 209067 *10 (S.D.N.Y. Nov. 17, 2022) ("The Complaint plainly alleges that Defendant's 'disclosures were made knowingly, as [Defendant] programmed the Facebook Pixel into its website code, knowing that Facebook would receive video titles and the subscriber's FID when a subscriber watched a video.'"); *Feldman v. Star Tribune Media Co. LLC*, No. 22-cv-1731 (ECT/TNL), 2023 U.S. Dist. LEXIS 37416, at *5 (D. Minn. Mar. 7, 2023) ("Allegations plausibly showing that personally identifiable information was consciously disclosed suffice, and the Complaint here includes such allegations."). In *Czarnioka*, the court noted that "[b]y installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within… Taking the factual assertions raised in the Complaint as true, and drawing all reasonable inferences in Plaintiffs favor, Defendant's installation of the Pixel exposed its subscribers' information to Facebook. This is sufficient to constitute 'disclosure' under the VPPA." *Id.* at *9.

As alleged, Defendant intentionally, willfully, and knowingly used Facebook Pixel on its Website to collect and disclose the PII of Website users, including Plaintiff. Plaintiff cannot imagine that Defendant will ultimately insist that it did not know that it had implemented the Pixel on its websites, or what the Pixel's purpose was, or that the Pixel would not distinguish between subscribers and other users. Plaintiff alleges, and the facts will show, that Defendant implemented the Pixel because it knew the Pixel's purpose was to collect and disclose the very information it collected and disclosed. Defendant cannot claim, particularly on the pleadings, not to have a

14

consciousness of what it was transmitting as to all website users with Facebook accounts, which necessarily included subscribers.

### D.  The VPPA Plainly Applies to Defendant's Pre-Recorded Video Content.

Defendant's final argument is that the video content on its website is not sufficiently similar to the "audio visual materials" encompassed by the VPPA. ([Doc. 25], 29-32). At absolute best, this is a fact-intensive argument which is inappropriate for a determination on the pleadings, as it would require a survey of the characteristics of a wide swath of Defendant's video offerings and a comparison to an even more voluminous body of historical video content. But it is also belied by the countless prior applications of the statute to providers of short-form video.  Defendant admits that "courts have recently denied motions to dismiss VPPA claims involving short, online video clips[,]" citing three examples. *Id.* at 32. But beyond that:

> [s]ince at least 2012, lower courts have construed 'similar audio visual materials' to include ***pre-recorded video content streamed over the internet*** on the ground that the legislative history of the VPPA indicates that 'Congress  was concerned with protecting the confidentiality of private information about viewing preferences ***regardless of the business model or media format involved***' and intended to cover new formats for delivering 'pre-recorded video content.'

*Walker v. Meta Platforms, Inc.*, No. 22-cv-02442-JST, 2023 U.S. Dist. LEXIS 93111, at *12-13 (N.D. Cal. Mar. 3, 2023) (citing *In re Hulu Priv. Litig.,* No. C 11-03764 LB, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012)) (emphasis added). Indeed, the court in *Hulu* engaged in a detailed analysis of the VPPA's legislative history. It found that:

> the Senate Report confirms that Congress was concerned with protecting the confidentiality of private information about viewing preferences regardless of the business model or media format involved. *See, e.g.*, S. Rep. No. 100-599 at 1 (VPPA follows a long line of statutes passed by Congress to extend privacy protections to records that contain information about individuals), 3 (quoting Senator Leahy's denouncement of the disclosures: 'It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read . . . . In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems  and telephones, all lodged together in

15

computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch. . . . I think that is wrong, I think that is Big Brother, and I think it is something we have to guard against), 2-4 (extensive discussion of privacy, including Supreme Court case law and noting that protecting an individual's choice of books and films is a pillar of intellectual freedom under the First Amendment).

*In re Hulu Privacy Litig.*, 2012 U.S. Dist. LEXIS 112916, at *17-18. There is no credible reading of the VPPA, its legislative history, or its extensive jurisprudence that would countenance excluding video content *en masse*—particularly at the pleading stage—based on its length or formatting. Here again, Defendant's argument must fail.

## **CONCLUSION**

Defendant's arguments, and those like them, have been rejected by most courts to consider them. For good reason. The disclosure and monetization of people's private video viewing information is an offensive intrusion into privacy that is prohibited by the VPPA. This Court should follow the overwhelming majority of courts that have rejected these and similar arguments, and deny Defendant's motion in its entirety.

Dated: August 15, 2023

/s/
Joshua Erlich, VA Bar No. 81298
THE ERLICH LAW OFFICE, PLLC
1550 Wilson Blvd., Ste. 700
Arlington, VA  22209
Tel:     (703) 791-9087
Fax:     (703) 722-8114
Email: jerlich@erlichlawoffice.com

Nicholas A. Coulson
LIDDLE SHEETS COULSON P.C.
975 East Jefferson Avenue
Detroit, MI 48207-3101
T: (313) 392-0015

F: (313) 392-0025
E: ncoulson@lsccounsel.com

*Counsel for Plaintiff and the Putative Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed electronically with the Clerk of

the Court and served electronically using the CM/ECF upon:

Jonathan Mark Shaw
Dhillon Law Group
2121 Eisenhower Ave
Suite 608
Alexandria, VA 22314
240-383-8758
Email: jshaw@dhillonlaw.com


*Counsel for Defendant*




                      /s/
                      _____
Joshua Erlich, VA Bar No. 81298
The Erlich Law Office, PLLC
1550 Wilson Blvd.
Suite 700
Arlington, VA  22209
Tel:    (703) 791-9087
Fax:    (703) 722-8114
Email: jerlich@erlichlawoffice.com


*Counsel for Plaintiff and the Putative Class*

18